IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JOHN HANES,                                   :

    Plaintiff,                               :

vs.                                           :            CA 03-0671-CG-C

GREYHOUND LINES, INC. and            :
JAMES DUNCAN,

    Defendants.                            :

## ORDER

This cause is before the Court on defendant James Duncan's motion to
withdraw admission (Doc. 82) and plaintiff's response (Doc. 90). After a
complete review of the written submissions of the parties, the following order
is entered pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.2(c)(1).

## FACTUAL BACKGROUND

1.      Plaintiff initially filed this action in the Circuit Court of Baldwin
County, Alabama on September 10, 2003. (*See* Doc. 1, Notice of Removal,
Attachment 3, COMPLAINT) Defendant Greyhound Lines, Inc. removed the
case to this Court on  October 6, 2003. (Doc. 1, Notice of Removal)

2.      By order dated February 4, 2004 (Doc. 11), the Court granted

plaintiff's motion to amend the complaint (Doc. 8); the amendment added James

Duncan as an individual co-defendant (*see* Doc. 12). Hanes asserts two causes

of action against Duncan; Count I alleges assault and battery and Count II asserts

a tort of outrage claim. (*See id.* at ¶¶ 11-16)

3.      Duncan filed his initial disclosures on June 2, 2004 (Doc. 41) and

finally answered the complaint on November 8, 2004 (Doc. 66) after having

been given that deadline by Chief United States District Judge Callie V.S.

Granade (*see* Doc. 62).

4.      One day after answering the amended complaint, that is, on

November 9, 2004, Duncan filed notice of his answers to plaintiff's request for

admissions. (Doc. 67)

5.      By motion dated January 10, 2005, defendant James Duncan

requests that this Court allow him to withdraw an admission. (Doc. 82) As

reflected in the motion, plaintiff's Request for Admission 7 provided as

follows: "John Hanes sustained injuries to his head and chest area which dictated

that he be transported to the hospital." (*Id.* at 1) Duncan made the following

response to Request for Admission 7: "Admitted that Mr. Hanes sustained

bruises to his head and that he was transferred to the hospital. Denied as to other

allegations." (*Id.*) While Duncan couches his motion in terms of a request to

withdraw the entire admission, he apparently only seeks to withdraw that portion

of the admission relating to the bruising on plaintiff's head inasmuch as Duncan does not quarrel with the fact that plaintiff was transported to the hospital following the altercation (*see, e.g.,* Doc. 115 Defendant Duncan's Proposed Findings of Fact and Conclusions of Law, at ¶19 ("Plaintiff was taken to University of South Alabama via ambulance.")).

6.      According to Duncan, he answered Request for Admission 7 in the affirmative based upon the Greyhound Non-Vehicular Accident Report, which contained a narrative statement from the reporting police officer that plaintiff had visible bruises to his head and neck (Doc. 82, Exhibit 7) but claims that, "as discovery has evolved, there is **substantial doubt** as to whether Hanes sustained bruises to his face in the altercation." (Doc. 82, at 1 (emphasis supplied)) The sole evidence to which Duncan can point to supporting the present request which came into existence after he filed notice of his answers to the request for admissions on November 9, 2004, is his own deposition testimony on December 9, 2004, wherein he testified that he did not see any bruises to plaintiff's head. (Doc. 82, Exhibit 1, Deposition of James Duncan, at 69)[1]   All

---

[1]      Duncan also testified that plaintiff had a mark right between his eyes. (Doc. 82, Duncan depo., at 92 & 94)

Duncan admitted during his deposition that he struck Hanes three times with his balled-up fists, recalling that one shot was to Hanes' mouth, one to his chest and one to an unknown part of Hanes body. (*See* Doc. 90, Duncan depo., at 70-72) Hanes went down to the ground after the third blow.

other deposition testimony which Duncan claims supports his request to withdraw Request for Admission 7, save for the December 7, 2004 additional deposition of Dr. Michael Sternberg, occurred some five to seven months before he filed notice of answering plaintiff's request for admissions. (*See* Doc. 82, Exhibits 2-6)[2]

## CONCLUSIONS OF LAW

1.      Rule 36 of the Federal Rules of Civil Procedure governs requests for admissions and has as its purpose the expediting of trial by relieving the parties of "'the cost of proving facts that will not be disputed at trial.'" *Perez v. Miami-Dade County*, 297 F.3d 1255, 1264 (11th Cir. 2002) (citations

---

(*Id*. at 72) Matthew Hoffman testified that he observed Duncan kick Hanes as well. (*See* Doc. 90, Deposition of Matthew Hoffman, at 41-43)

[2]      Joanie Owens, when questioned whether she noticed any bruises or marks about plaintiff's head or face, testified, on April 19, 2004, that he had a little scratch on his head (Doc. 82, Exhibit 2, Deposition of Joanie Owens, at 23); Margaret Bailey testified, on April 19, 2004, that plaintiff has a "little thing on his head" above one of his eyes and toward one of his temples (Doc. 82, Exhibit 3, Deposition of Margaret Bailey, at 19-20); Dr. Michael Sternberg testified, on May 25, 2004, that plaintiff presented to the hospital with no visible signs of trauma to his face (Doc. 82, Exhibit 4, Deposition of Michael Sternberg, M.D., at 23) and, on December 7, 2004, that the several abrasions and contusions in the photograph shown to him of plaintiff's person were not present when he examined plaintiff on June 11, 2003 (Doc. 82, Exhibit 4, December 7, 2004 Deposition of Sternberg); Brent Warrick testified, on May 25, 2004, that he could not recall if there were any physical marks on Hanes and that his nursing notes reflected swelling on the left arm only (Doc. 82, Deposition of Brent Warrick, at 19 & 44); and Matthew Hoffman testified, on June 8, 2004, that he observed some redness to the side of plaintiff's face (Doc. 82, Hoffman depo., at 67). Hoffman also testified that Joanie Hoffman told him that when Hanes returned to the Greyhound terminal later that day she observed bruises on his face and neck. (Doc. 90, Hoffman depo., at 90)

omitted), *cert. denied*, 537 U.S. 1193, 123 S.Ct. 1291, 154 L.Ed.2d 1028

(2003). "Once the matter is admitted, Rule 36(b) provides that it is

'conclusively established unless the court on motion permits withdrawal or

amendment of the admission.'" *Id.* (quoting Fed.R.Civ.P. 36(b)); *see Coca-Cola*

*Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.,* 123 F.R.D. 97, 102 &103

(D.Del. 1988) ("The Court of Appeals for the Third Circuit similarly treats a

Fed.R.Civ.P. 36 admission as judicial and not evidentiary. . . . 'A . . . judicial

admission, deliberately drafted by counsel for the express purpose of limiting

and defining the facts in issue, is traditionally regarded as conclusive, and an

admission under Rule 36 falls in this category.' Further, the Court stated, an

admission is a 'studied response made under sanctions against easy denial. It is

made under the direction and supervision of counsel, who has full professional

realization of their significance. Thus an admission is not merely another layer

of evidence upon which the district court can superimpose its own assessment

of weight and validity but rather an unassailable statement of fact that narrows

the triable issues in the case.'").

     2.    The Eleventh Circuit has established a two-part test for district

courts to apply when determining whether to grant or deny a motion to withdraw

or amend a request for admission. *Perez, supra*, at 1264.; *see also id.* at 1265

("Rule 36(b)'s two-part test is much more than merely hortatory; it 'emphasizes

the *importance of having the action resolved on the merits*, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice.'"). "First, the court should consider whether the withdrawal will subserve the presentation of the merits, and second, it must determine whether the withdrawal will prejudice the party who obtained the admissions in its presentation of the case." *Id*. at 1264 (citations omitted).

       3.      The first prong of the test "'emphasizes the importance of having the action resolved on the merits,'and is 'satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case[.]'" *Id*. at 1266 (internal citation omitted). Defendant Duncan has simply failed to establish that the subject admission would practically eliminate any presentation of the merits of the case. Plaintiff has asserted two claims against Duncan; plaintiff claims in Count I of his amended complaint that Duncan committed an assault and battery on his person and in Count II asserts a tort of outrage claim against Duncan. (Doc. 12, ¶¶ 11-16)   Duncan's admission that Hanes sustained bruises to his head does nothing to eliminate presentation of the merits of the case relative to the assault and battery claim because "[a]n actual injury to the body is not a necessary element of a civil assault and battery." *Surrency v. Harbison*, 489 So.2d 1097, 1104 (Ala. 1986); *see also id*. ("'"A successful assault becomes a battery. A battery consists in an injury

6

actually done to the person of another in an angry or revengeful or rude or insolent manner, as by spitting in the face, or in any way touching him in anger, or violently jostling him out of the way, or in doing any intentional violence to the person of another. *The wrong here consists, not in the touching, so much as in the manner or spirit in which it is done, and the question of bodily pain is important only as affecting the damages. Thus, to lay hands on another in a hostile manner is a battery, although no damage follows*; but to touch another, merely to attract his attention, is no battery and not unlawful."'"); *Wood v. Cowart Enterprises, Inc.,* 809 So.2d 835, 837 (Ala.Civ.App. 2001) ("'Assault' has been defined as 'an *intentional*, unlawful, offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented.' . . . In a civil case, the elements of battery are: (1) that the defendant touched the plaintiff; (2) that the defendant *intended* to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner."). Moreover, bruises to the head do not come close to establishing the elements of the narrowly construed tort of outrage. *See, e.g., Grantham v. Vanderzyl*, 802 So.2d 1077, 1081 (Ala. 2001) ("In order to present a cognizable claim under the narrowly construed tort of outrage, a plaintiff must prove that

Case 1:03-cv-00671-CG-C   Document 138   Filed 04/21/05   Page 8 of 9

the defendant's conduct 1) was intentional or reckless; 2) was extreme and outrageous; and 3) caused emotional distress so severe that no reasonable person could be expected to endure it."); *Mohacsy v. Holiday Inns, Inc.,* 603 So.2d 956, 959 (Ala. 1992) ("For Mohacsy to recover under the tort of outrage, he must demonstrate that the defendants' conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it. . . . 'To be actionable under the tort of outrage, the conduct involved must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and . . . be regarded as atrocious and utterly intolerable in a civilized society.""").[3] Accordingly, the undersigned finds that the first prong of the test has not been met as Duncan has not shown that granting his motion to withdraw the admission would aid in the """ascertainment of the truth and the development of the merits."" *Perez, supra*, 297 F.3d at 1266 (citations

---

[3]        In fact, this case does not fall within the three areas of conduct which the Alabama Supreme Court has recognized to be outrageous. *See Potts v. Hayes*, 771 So.2d 462, 465 (Ala. 2000) ("The tort of outrage is an extremely limited cause of action. It is so limited that this Court has recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context, *Whitt v. Hulsey*, 519 So.2d 901 (Ala. 1987); (2) barbaric methods employed to coerce an insurance settlement, *National Sec. Fire & Cas. Co. v. Bowen*, 447 So.2d 133 (Ala. 1983); and (3) egregious sexual harassment, *Busby v. Truswal Sys. Corp.,* 551 So.2d 322 (Ala. 1989).").

omitted).[4]

4.    Duncan's inability to establish the first prong of the test obviates the necessity of any consideration by this Court of the second prong of the test.

## CONCLUSION

In light of the foregoing, defendant James Duncan's motion to withdraw admission (Doc. 82) is **DENIED**.

**DONE** and **ORDERED** this the 21st day of April, 2005.

S/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[4]    The undersigned would note, with interest, that Duncan does not take the position that there is a total absence of evidence that plaintiff's face was bruised from the blows Duncan delivered to his face and chest but only that there is a question about whether those blows caused bruising so as to create "substantial doubt as to whether Hanes sustained bruises to his face in the altercation." (Doc. 82, at 1)  Such "doubt" does not, in the undersigned's opinion, provide a sufficient basis to allow withdrawal of the admission in its totality when the evidence is clear that plaintiff suffered injury during the altercation, whether a scratch-mark or bruises, and the fact of such injury, as aforesaid, does not establish Duncan's liability as to either claim asserted by Hanes.

The undersigned also rejects Duncan's argument that his admission was based on a faulty assumption. According to Duncan, he claims he incorrectly assumed that plaintiff's face was bruised because that very information was contained in the police officer's narrative contained on the Greyhound Line Non-Vehicular Accident Report. (*See* Doc. 82, at ¶ 3) The undersigned rejects this argument because the majority of deposition testimony that Duncan cites to in support of his present position that plaintiff's face was not bruised in the subject altercation was in existence months before he admitted that plaintiff's facial bruises were caused by the altercation.